| | |
|---|---|
| RALPH DIAZ, a/k/a JOSE LUIS RODRIGUEZ TIRADO, ) ) )    Petitioner, ) ) v. ) ) STATE OF TENNESSEE BOARD OF ) PROBATION AND PAROLE, ) )    Respondent. ) | No. 3:12-cv-00123 Judge Trauger |

## MEMORANDUM OPINION

The State of Tennessee Board of Probation and Parole has filed a Motion for Summary Judgment (ECF No. 41) asserting that it is entitled to judgment in its favor on the grounds that there are no disputed issues of material fact and the petition for the writ of habeas corpus (ECF No. 1) filed by petitioner Ralph Diaz, a/k/a Jose Luis Rodriguez Tirado,[1] has been rendered moot.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The court notes that the respondent, in filing its motion for summary judgment, did not comply with Local Rule 56.01(b), which requires a party filing a motion for summary judgment to submit a "separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial."  The petitioner, however, does not contest the respondent's factual statement included in its brief and supported by references to authenticated documents submitted with the motion for summary judgment. (*See* Petitioner's Memorandum in Support of Rebuttal to Summary Judgment ("Pet'r's Memo."), ECF No. 44, at 1 ("Petitioner's rebuttal stems from . . . the admissions of the Respondents, both through the Notarized Affidavit of Charles M. Traughber, and attached documents.").)  The facts set forth herein are either undisputed or are viewed in the light most favorable to the petitioner as the non-moving party.

Diaz is a federal prisoner incarcerated at the United States Penitentiary in Memphis, Tennessee.  He

---

[1] From the record it appears that the petitioner's real name is Jose Luis Rodriguez Tirado and that the name "Ralph Diaz" is an alias.  Because the petitioner was referred to as Ralph Diaz in all of the underlying state proceedings and continues to be referred to by that name in the respondent's filings, this court will also refer to him as "Diaz."

filed his present petition, purportedly under 28 U.S.C. § 2254, toward the end of January 2012. Because Diaz is not in custody pursuant to a state-court judgment, the court has found that the petition is more appropriately construed under 28 U.S.C. § 2241. In his petition, Diaz challenges the future authority of the Tennessee Board of Probation and Parole ("Board") to take him into custody after completion of his federal sentence, in connection with a state parole-violation warrant issued in 2006.

Diaz has a lengthy criminal history, most of which is not relevant to this case but is provided here by way of background. After a prior conviction in the state of Florida for armed robbery and an unauthorized departure from detention at a Florida work release center, *see State v. Diaz*, No. 797 ("*Diaz I*"), 1988 WL 43060, at *1 (Tenn. Ct. Crim. App. May 6, 1988), Diaz came to Tennessee and committed robbery in July 1986. He was subsequently convicted of armed robbery by a Tennessee jury and sentenced to serve forty years of imprisonment as a Range II, persistent offender. *State v. Diaz*, No. 778 ("*Diaz II*"), 1988 WL 87070, at *1 (Tenn. Ct. Crim. App. Aug. 23, 1988). While he was under arrest but prior to his conviction for armed robbery, Diaz assaulted a jailer and attempted to escape. *Diaz I*, 1988 WL 43060, at *1. Diaz pleaded guilty to the charge of attempted felony escape and was found guilty by a jury of aggravated assault. He was sentenced to serve four years' and ten years' imprisonment on those charges, respectively, both terms to run consecutively to each other and consecutively to the forty-year sentence for armed robbery, for a total effective sentence of fifty-four years. *Id.* Diaz was granted parole in October 2003, after serving about eighteen years, and was released to the custody of Florida on a Florida detainer on November 20, 2003. Thereafter, he was held in a Florida state prison until February 2005. After being released from custody in Florida, he first reported to his Tennessee parole officer on February 3, 2005. (Aff. of Charles M. Traughber ("Traughber Aff."), ECF No. 42-4, at ¶ 3.)

On November 17, 2006, Diaz was arrested for unlawful possession of a weapon in Decatur County, Tennessee. According to the affidavit of Charles Traughber, Chair of the Tennessee Board of Probation and Parole ("Board"), the Board requested a parole-violation warrant based on the new arrest and based on Diaz's failure to report the arrest to his parole officer. (Traughber Aff. ¶ 4; Parole Violation Report, ECF No. 42-4, at 4–5.) Parole Violation Warrant No. A58638 ("warrant no. A58638") was issued on November 28, 2006. (Traughber Aff. ¶ 4; State Warrant, ECF No. 42-4, at 6.) As a result of the issuance of the warrant, Diaz was

-2-

Case 3:12-cv-00123    Document 47    Filed 02/11/13    Page 2 of 10 PageID #: 389

declared delinquent pursuant to Tenn. Code Ann. § 40-28-122 and the Board's rules and regulations. The parole-violation warrant remained active, but Diaz's whereabouts remained unknown to the Board from November 17, 2006 until January 2009.

On January 11, 2009, Diaz was arrested in Henderson County, Tennessee for possession of a handgun with intent to go armed, unlawful carrying or possession of a weapon, and criminal impersonation. At that time of his arrest on those charges, he was also finally served with warrant no. A58638. (Traughber Aff. ¶ 6.)

On January 12, 2009, the Board received notice that Diaz had been taken into federal custody based on federal felon-in-possession charges. On January 13, 2009, warrant no. A58638 was filed with the U.S. Marshals Service to act as a detainer and to preserve the Board's interest in the petitioner's custody. (Traughber Aff. ¶ 6.) On January 20, 2009, the petitioner was served with his parole violation notice of charges and administrative waiver, and the petitioner opted to waive his right to a preliminary hearing on the parole-violation charges. (Notice of Charges and Explanation of Rights, ECF No. 42-4, at 9.) Ultimately, however, apparently because the petitioner was already in federal custody by then, no parole revocation hearing was conducted. (Traughber Aff. ¶ 8.)

On August 2, 2010, pursuant to a plea agreement, Diaz pleaded guilty to two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). *United States v. Rodriguez Tirado*, Case No. 1:07-cr-10029-JDB (W.D. Tenn. Aug. 2, 2010) (Plea Agreement, ECF No. 85). He was sentenced to serve a 100-month prison term on each count, to run concurrently to each other and consecutively to any sentences imposed for parole violations. *Id.* (W.D. Tenn. Dec. 6, 2010) (Redacted Judgment, ECF No. 97).

Diaz filed this action in January 2012, challenging the Board's future authority to take Diaz into custody pursuant to the warrant issued in November 2006. In his memorandum in support of his habeas petition, Diaz stated:

> A detainer from [the state of Tennessee] was placed on me as a result of the parole violation and the Probation and Parole Board in Tennessee claimed that I had to return to serve out my parole violation determination after completion of my federal sentence.
>
> I responded by submitting requests to the Unit team here that the State of Tennessee has relinquished custody over my person to the federal jurisdiction without obtaining a Writ of Habeas Corpus Ad Prosequendum. The detainer was soon dropped. However, I have written the Board of Parole and Probation explaining that they no longer have the authority

>    to request that I serve out the determination of the parole violation in this matter. They have not responded, and I assume that the state of Tennessee still presumes that they still have that right.
>
>    . . . . Petitioner is not obligated to return to the state of Tennessee for a determination of a parole violation after service of this federal sentence.

("Attached Sheets to Petition under 28 U.S.C. § 2254," ECF No. 1-1, at 2–3.) In his Memorandum in opposition to the Board's motion for summary judgment, Diaz insists that the Board's actions have violated his constitutional rights but, "more importantly, the rules and regulations of the Respondents," that is, the state rules and regulations governing the Tennessee Board of Probation and Parole. (Pet'r's Memo., ECF No. 44, at 3.)

According to Traughber, on November 13, 2012, after the court denied the Board's motion to dismiss this action on the pleadings, the Board "withdrew the rule violations[2] which served as the basis of Mr. Diaz' parole violation warrant, No. A58638, issued on November 28, 2006, and the Notice of Charges served upon Diaz on January 20, 2009, as well as Diaz' delinquency status which resulted from the Board's November 28, 2006 declaration of delinquency resulting from the issuance of the warrant." (Traughber Aff. ¶ 11.) On November 13, 2012, the Board obtained a new parole violation warrant, No. A72805, charging the petitioner with two violations of Rule 2 of the rules of his parole arising out of his August 2, 2010 plea of guilty to the federal weapons charges. (Traughber Aff. ¶ 12; Nov. 13, 2012 State Warrant, ECF No. 42-4, at 32.) The Board declared the petitioner delinquent under the new warrant effective November 13, 2012. (Traughber Aff. ¶ 12; Nov. 13, 2012 Parole Violation Report – Notice of Charges, ECF No. 42-4, at 33.)

Diaz purports to have no knowledge of the withdrawal of warrant no. A58638 and issuance of the new warrant no. A72805, and reiterates his belief that warrant no. A58638 "continues to hold the Petitioner in abeyance." (Diaz Aff., ECF No. 46, at ¶ 13.) Otherwise, he does not contest the respondent's statement of facts except to relay his version of the facts concerning his arrest in January 2009, at which time he was told he was being arrested for a parole violation. More specifically, while the Board contends that Diaz was

---

[2] The court presumes that Traughber means that the Board withdrew its findings that Diaz was in violation of the Board's Rules 2, 3 and 4, upon which finding the "Parole Violation Report – Notice of Charges" and "Parole Violation Report – Parole Officer's Report" (ECF No. 42-4, at 4–5) were based. The Notice of Charges attached to Traughber's Affidavit (ECF 42-4, at 4–5), is distinct from the Notice of Charges and Explanation of Rights (ECF No. 42-4, at 9), also attached to Traughber's Affidavit, that was served on Diaz on January 20, 2009.

-4-

arrested for possession of a handgun with intent to go armed, unlawful carrying or possession of a weapon, and criminal impersonation (*see* Traughber Aff. ¶ 6), Diaz maintains that the outstanding warrant for parole violation "caused the arrest, and during the arrest the other charge[]s were discovered." (Pet'r's Memo., ECF No. 44, at 5.) While this contention appears to create a factual dispute, the court finds that the dispute is not material. Diaz also contends that the arrest and search were part of a "set up." (Aff. of Ralph Diaz, ECF No. 46 ("Diaz Aff."), ¶ 14.) He presents no facts in support of this supposition, and it is completely immaterial in light of his execution of a plea agreement and entry of a guilty plea to the federal charges. Diaz also makes unsupported and irrelevant claims relating to the factual validity of his November 2006 arrest and delinquency declaration. Finally, Diaz alleges that, because of the detainer lodged in 2009 by the Board, he was held in "High Security" and has been denied access to many prison programs that might have assisted him in his efforts to rehabilitate. (Pet'r's Memo., ECF No. 46, at 11.[3])

## II. STANDARD OF REVIEW

Summary judgment is a device for promptly disposing of actions in which there is no genuine issue as to any material fact. Fed. R. Civ. P. 56. Rule 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Davis v. Omni-Care, Inc.*, 482 F. App'x 102, 106 (6th Cir. 2012).

The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence of an issue for which the non-moving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the pleadings and any discovery documents in the record, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* The party opposing a properly supported

---

[3] This statement is found in Diaz's unsworn Memorandum in opposition to the motion for summary judgment. Because it is not contained in an affidavit, declaration or other sworn statement, it is not "evidence" that may be considered in the context of a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . ."). The court nonetheless presumes it to be true for purposes of ruling on the respondent's motion for summary judgment.

motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Id.* He may not rest upon the mere allegations or denials in the pleadings. *Id.* As the United States Supreme Court has said, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Finally, if the respondent moves for summary judgment based on the lack of proof of material fact, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which [the trier of fact] could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

## III. ANALYSIS AND DISCUSSION

As set forth above, Diaz is currently serving a one-hundred-month federal sentence arising from his August 2, 2010 guilty plea to two counts of being a felon in possession of a firearm. The guilty plea was entered while Diaz was on parole from his fifty-four-year state sentence for armed robbery, attempted escape, and aggravated assault. Diaz does not challenge the federal sentence he is currently serving or the underlying state convictions. Instead, he challenges the ability of the State of Tennessee to take custody of him in the future, based on alleged parole violations. More specifically, in his actual habeas petition, Diaz asserted that the State of Tennessee Board of Probation and Parole "no longer has sovereignty over [his] custody . . . where they did not request a Writ of Habeas Corpus Ad Prosequendum for temporary custody" in violation of the Fifth Amendment to the United States Constitution. (ECF No. 1, at. 5; ECF No. 1-1, at 3.) In his response in opposition to the respondent's motion to dismiss, Diaz, citing *Morrissey v. Brewer*, 408 U.S. 471 (1972), argued that he should not be required to return to the State of Tennessee to serve the remainder of his state sentence after release from federal custody, because the State of Tennessee released him to federal custody and did not conduct a revocation hearing following his being served with the 2006 parole-violation warrant on January 11, 2009. (ECF No. 32, at 9–20).

In his response in opposition to the Board's motion for summary judgment, Diaz raises a variety of new arguments and claims, including that: (1) even if the first parole violation warrant and notice of charges have been withdrawn, with the issuance of the new warrant the Board continues to violate Diaz's constitutional

-6-

right to a parole-revocation hearing; (2) the respondent's failure to provide a parole-revocation hearing after service of the original warrant violated multiple state rules and regulations, and in particular the rules and regulations that required that the petitioner be afforded a parole revocation hearing within fourteen days after being served with warrant no. A58638 in 2009; (3) the original warrant violated Diaz's due-process right to a hearing and resulted in the denial of his right to post bail on the other charges in 2009; (4) the detainer warrant that was lodged with the Bureau of Prisons pursuant to warrant no. A58638 resulted in Diaz's being classified as a high-security inmate and being denied access to prison programs "which caused for the atypical and more significantly harsh sentence than would have been given had the parole violation warrant . . . not . . . been pending" (ECF No. 44, at 15); (5) Diaz stopped earning credit for parole time served from the date in 2006 on which he was first declared delinquent, in violation of his right to due process; and (6) the respondent should not be allowed to present "new facts" at the "last minute" (*id.* at 20).

The Board's motion, however, addresses only the claims in Diaz's original petition and responds to the court's order denying the Board's motion to dismiss, in which the court observed that there was an apparent disputed issue of fact as to whether the parole violation warrant no. A58638 had technically been "executed" or served, and a question of law as to what difference service or execution might make. (ECF No. 33, at 2.) The Board now concedes that the warrant was in fact served but contends that any potential legal issue has been rendered moot by the Board's withdrawal of the warrant and related charges.

The court agrees. Mootness is a threshold question that may deprive the court of jurisdiction. *See Rettig v. Kent City Sch. Dist.*, 788 F.2d 328, 330 (6th Cir.), *cert. denied*, 478 U.S. 1005 (1986). A case becomes moot "when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) (citation omitted). A federal court has no authority to render a decision upon moot questions. *Bachman v. Bagley*, 487 F.3d 979, 981 (6th Cir. 2007) (citing *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001)). Because the original parole violation warrant, charges of alleged rules violations, and declaration of delinquency which were the topic of the petitioner's § 2241 petition have all been withdrawn by the Board, they no longer form the basis for any future exercise of custody over Diaz by the State of Tennessee. Thus, the grounds for the petitioner's original legal claim—that he was entitled to a hearing on the original charges or dismissal of those

charges—has been rendered moot. Because the claims in the original petition have been rendered moot, the court lacks subject-matter jurisdiction over the action, and the petition is subject to dismissal. Diaz's assertion that the Board should not be allowed to assert "new facts" showing mootness is frivolous, because mootness by definition involves "events occur[ring] during the pendency of a litigation." *Carras*, 807 F.2d at 1289.

Diaz's other arguments in opposition to the Board's motion are largely beside the point. Diaz's insistence that the Board's actions violated the Board's own rules and regulations is irrelevant because violations of state law do not warrant habeas relief. *See* 28 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States. . . ."); 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

Insofar as Diaz claims that his civil rights were violated by the Board's lodging of a detainer while he was incarcerated in federal prison because it affected his ability to participate in various prison programs, these claims are outside the purview of his § 2241 petition, because they concern the conditions of Diaz's confinement rather than the fact or duration of confinement. *Cf. McCall v. Ebbert*, 384 F. App'x 55, 57–58 (3d Cir. 2010) (holding that a petitioner's challenges to security classification and resulting prisoner transfer were challenges to conditions of confinement and therefore not cognizable under § 2241). Regardless, it is unlikely that the petitioner could state a claim against the Board under § 1983 based on the allegedly wrongful lodging of the detainer either. *Cf. Anderson v. Roberts*, No. 12-3025-SAC, 2012 WL 2814138, at *1–*2 (D. Kan. July 10, 2012) (where the plaintiff alleged that officials with the Kansas Department of Corrections should have cancelled a detainer warrant which caused the plaintiff to be denied minimum custody for a period of three months and caused him to be excluded from participating in a specific prison program, holding that the plaintiff failed to state a claim under § 1983 because the plaintiff's allegations failed to show that he was subject to any atypical and significant hardship in relation to the ordinary incidents of prison life for purposes of establishing a violation of his constitutional rights); *Martell v. Sec'y, Dep't of Corrs.*, No. 8:12-cv-604-T-33MAP, 2012 WL 1016821, at *2 (M.D. Fla. March 26, 2012) (where a § 2241 petitioner alleged that an immigration detainer lodged against him prevented him from accessing beneficial job training and educational programs

and the opportunity for parole, holding that the petitioner failed to allege facts suggesting the detainer imposed a "significant or atypical hardship on him in relation to ordinary incidents of prison life" and therefore failed to state a claim for a due-process violation).

Finally, to the extent Diaz seeks to have the court exercise jurisdiction over this matter based on his claim that the Board might be erroneously computing his parole time based on the withdrawal of the revocation, or on the basis that the new parole revocation warrant should be dismissed because the Board continues to violate Diaz's constitutional right to a hearing on that warrant, the court must decline that invitation. These claims are not encompassed by the original habeas petition; it apparent that the concern regarding the computation of parole time, in particular, is purely speculative; and Diaz has not exhausted his state remedies with respect to either of these claims. Moreover, because it is clear that the new warrant has not been served on Diaz, and parole has not actually been revoked yet, the Supreme Court's decision in *Moody v. Daggett*, 429 U.S. 78 (1976), is controlling and requires the conclusion that such a claim would be subject to dismissal. In *Moody*, the petitioner, a federal prisoner, petitioned for a writ of habeas corpus seeking dismissal of a federal parole-violation warrant on the ground that he had been denied a prompt hearing at which the pending parole-revocation issues could be aired. In that case, the parole violation warrant had been "issued and lodged with the institution of [the petitioner's] confinement but not served on him." *Id.* at 79. In affirming the dismissal of the habeas petition, the Court stated in pertinent part:

> Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time. Though the gravity of petitioner's subsequent crimes places him under a cloud, issuance of the warrant was not a determination that petitioner's parole under his 1962 rape conviction will be revoked; the time at which the Commission must make that decision has not yet arrived. With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which *Morrissey [v. Brewer*, 408 U.S. 471 (1972),[4]] sought to protect. Indeed, in holding that "(t)he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody," [*id.* at 488], we established execution of the warrant and *custody under that warrant* as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant.

---

[4] In *Morrissey*, "the Supreme Court held that due process requires that a parolee be provided with a hearing before revocation of his parole." *Harrison v. Parke*, 917 F.2d 1304 (Table), 1990 WL 170428, at *3 (6th Cir. Nov. 6, 1990) (citing *Morrissey*, 408 U.S. at 487–90).

-9-

*Moody*, 429 U.S. at 86–87 (some citations omitted) (emphasis added). The Court ultimately held that, "without regard to what process may be due petitioner before his parole may be finally revoked, we hold that he has been deprived of no constitutionally protected rights simply by issuance of a parole violator warrant." *Id.* at 89.

Any claim related to the new parole-violation warrant in this case would be subject to the same analysis: Diaz has not been served with or, more importantly, taken into custody on the basis of that warrant; whether and when he might be is subject to speculation; and he has no protected liberty interest that has been infringed by the mere issuance of the warrant and service of notice thereof on the Bureau of Prisons (assuming such notice has occurred). It is clear that Diaz is not entitled to habeas relief on the basis of the newly issued parole-violation warrant.

## IV. CONCLUSION

In sum, because the claims set forth in Diaz's habeas petition have clearly been rendered moot by the Board's withdrawal of the warrant and charges to which Diaz's original petition was based, the Board is entitled to summary judgment in its favor and dismissal of the claims against it. Diaz's arguments in opposition to the Board's motion are without merit.

An appropriate order is filed herewith.

_____
Aleta A. Trauger
United States District Judge